UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LATANYA SPOORS,

                Plaintiff,                    Case No. 1:22-cv-1149

v.                                   Honorable Sally J. Berens

HCH et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 12.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 8.)

On December 5, 2022, Plaintiff filed her original complaint. (ECF No. 1.) Subsequently, on December 8, 2022, Plaintiff filed an amended complaint. (ECF No. 3.) "An amended complaint supersedes an earlier complaint for all purposes," *Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) (citing *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013)); *see also Pacific Bell Telephone Co. v. linkline Commc'ns, Inc.*, 555 U.S. 438, 456 n. 4 (2009). Accordingly, Plaintiff's amended complaint is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison*

*Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the

named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.   Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Women's Huron Valley Correctional Facility (WHV) in Ypsilanti, Washtenaw County, Michigan. The events about which she complains occurred at the Newaygo County Jail, in White

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Cloud, Newaygo County, Michigan. Plaintiff sues "ACH,"[2] District Manager of the Medical Department Jennifer Burgess, Newaygo County Sheriff Robert Mendham, and Newaygo County Jail Correctional Officer Larry C. in their individual and official capacities.

Plaintiff alleges that she was denied adequate medical care while at the Newaygo County Jail, beginning July 8, 2022. (Am. Compl., ECF No. 3, PageID.21; *see also* ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5.)[3] Specifically, Plaintiff claims that she was denied seizure medication by "medical staff" for almost two weeks, resulting in multiple seizures and Plaintiff falling out of her bunk. (*Id.*; ECF No. 1-1, PageID.6; ECF No. 1-2.) "Medical staff" failed to give Plaintiff the proper dose of medication or refused medications entirely. (ECF No. 1-1, PageID.6.) Plaintiff was also refused breathing treatments (*id.*, PageID.7–8), an appointment with an orthopedic specialist for injections (*id.*, PageID.8), and a mammogram, (*id.*, PageID.10).

Plaintiff alleges that "medical staff" gave Plaintiff food that "doesn't agree with [Plaintiff's] GI tract" or food allergies, causing Plaintiff's "IBS" and "acid reflux" to worsen and resulting in multiple "IBS accident[s]." (ECF No. 3, PageID.6; ECF No. 1-1, PageID.6; ECF No. 1-2). At times, "no one" did anything following Plaintiff's "IBS accident[s]," (ECF No. 1-2, PageID.9, 10) including, on occasion, leaving Plaintiff in her soiled undergarments until the following shift. (*Id.*, PageID.10.) She claims that unidentified "staff" tried to "talk [Plaintiff] out

---

[2] It appears from Plaintiff's amended complaint that ACH refers to the entity contracted to provide medical care within the Newaygo County Jail.

[3] Plaintiff's amended complaint provides very little detail on its own. However, with Plaintiff's original complaint, Plaintiff included five exhibits, (ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5) which the court presumes is the "documentation" that Plaintiff references in her amended complaint. (ECF No. 3, PageID.2.) Although Plaintiff's amended complaint supersedes the original complaint for all purposes, in reading Plaintiff's *pro se* amended complaint indulgently, the Court has looked to these original exhibits for a more complete understanding Plaintiff's claim.

of [the] lawsuit" (ECF No. 1-2, PageID.9), "harassed and threatened" her (*id.*, PageID.10), and made it hard for her to contact her attorney (*id.*, PageID.10–11).

As to Defendant Larry C., Plaintiff claims that Defendant Larry C. refused to change Plaintiff out of her soiled undergarments following an "IBS accident" on September 27, 2022, requiring that Plaintiff wait until the next shift for clean undergarments. (ECF No. 1-2, PageID.10.) On October 17, 2022, Defendant Larry C. threatened Plaintiff "during meds," telling Plaintiff that he would have medical take her off her seizure medication "and that he didn't care if [Plaintiff] had a seizure and died[; . . .] he would make sure that none of the staff checked on [Plaintiff]." (*Id.*, PageID.11.)

On November 9, 2022, Plaintiff began experiencing stomach cramps and believed that she was experiencing a tubal pregnancy. (ECF No. 1-2, PageID.11.) "Medical staff" and an unnamed doctor refused Plaintiff testing and treatment (*id.*, PageID.11–12) but, as of the filing of Plaintiff's amended complaint, they suddenly "want to do something" (ECF No. 1-1, PageID.6).

Plaintiff seeks injunctive and declaratory relief and compensatory and punitive damages. (ECF No. 3, PageID.22–23.)

## II.  Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

5

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Burgess and Mendham

Plaintiff does not specify the nature of her claims against Defendants Burgess and Mendham. Plaintiff identifies Defendant Mendham as the Newaygo County Sheriff and Defendant Burgess as the ACH District Manager. (ECF No. 3, PageID.20) Plaintiff states that Defendant Burgess is responsible for overseeing the medical department of the Newaygo County Jail. (*Id.*) However, Plaintiff does not mention either Defendant in the factual allegations of Plaintiff's amended complaint. Plaintiff instead primarily mentions wrongdoing by unnamed "staff" and

"medical staff." Even accepting Plaintiff's factual allegations as true, as is required at this stage,

Plaintiff fails to state any claim against Defendants Mendham and Burgess.

It is well-settled that government officials may not be held liable for the unconstitutional

conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*,

556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson*

*v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon

active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene*

*v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor

can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*,

310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983

liability may not be imposed simply because a supervisor denied an administrative grievance or

failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295,

300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable unless the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." Shehee,
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We
> have interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300,

and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Mendham and Burgess encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts about the conduct of Defendants Mendham and Burgess. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Mendham and Burgess were personally involved in the events described in Plaintiff's amended complaint. Such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss Plaintiff's action against Defendants Mendham and Burgess.

### B.      Allegations Against "Staff" and "Medical Staff"

Plaintiff makes multiple allegations against "staff" and "medical staff." However, these allegations are not sufficient to state a Section 1983 claim against any of the named Defendants. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly,* 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Frazier v. Michigan,* 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). As discussed above, the named Defendants may not be held liable under Section 1983 for the unconstitutional conduct of others under a theory of respondeat superior or vicarious liability. *See Iqbal,* 556 U.S. at 676. Consequently, Plaintiff's allegations against unidentified staff members are not sufficient to state a claim under Section 1983.

### C.      Official Capacity Claims

In addition to naming Defendants individually, it appears that Plaintiff seeks to bring claims against Defendants in their official capacities. (ECF No. 3, PageID.19.) Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55. Thus, an official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims against Defendants employed at the Newaygo County Jail are treated as claims against the County, while claims against individuals employed by ACH are treated as claims against ACH itself. For present purposes, the Court need not distinguish between the entities and those employed by each because Plaintiff fails to state any official capacity claim.

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)).

A plaintiff can show the existence of a policy or custom by alleging facts that show one of the following circumstances: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman*, 974 F.3d at 747 (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). In this case, Plaintiff does not allege the existence of an illegal official policy or an unconstitutional "custom," meaning a practice that is so widespread as to have the force of law. *See Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiff also does not allege any facts that would indicate ratification by any individual with policy-making authority. To the extent that Plaintiff seeks to bring an official capacity claim based upon allegedly inadequate training or supervision, that claim fails as well.

> "[M]unicipal liability under § 1983 attaches where—and only where—a *deliberate choice* to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (emphasis added) (citing *Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) ("'policy' generally implies a course of action consciously chosen from among various alternatives.")).

*Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *see also Slusher v. Carson,* 540 F.3d 449, 457 (6th Cir. 2008) (citation omitted) ("The inadequacy of police training only serves as a basis for § 1983 liability 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'"). To establish deliberate indifference in the context of a failure to train claim, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the [governmental entity] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."

10

*Id.* (internal quotation marks omitted) (citing *Miller v. Calhoun County,* 408 F.3d 803, 816 (6th Cir. 2005)) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take meliorative action was deliberate," plaintiff's claim of municipal liability under Section 1983 fails).

Here, Plaintiff has provided no factual allegations regarding prior instances of unconstitutional conduct or the awareness of the same by any individual with policymaking authority such that it could be said that any individual with policy-making authority made a deliberate choice to engage in a course of action. Moreover, the Court cannot infer inadequate training from the incidents described in Plaintiff's complaint. The Supreme Court has long held that an inference of inadequate training such as this is "unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985). Allowing an inference of inadequate training because upon incidents of wrongdoing alone, would permit "a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker." *Id.*

As Plaintiff has alleged no facts to support a claim of municipal liability, Plaintiff cannot maintain "official capacity" claims against Defendants under Section 1983. The Court will therefore dismiss Plaintiff's official capacity claims in their entirety.

### D.    Defendant Larry C.

Viewed indulgently, Plaintiff brings two claims against Defendant Larry C. First, Plaintiff alleges that, on September 27, 2022, Defendant Larry C. was aware that Plaintiff had soiled her undergarments due to an "IBS accident" but refused to immediately provide Plaintiff with clean undergarments, requiring her to wait until the next shift. (ECF No. 1-2, PageID.10.) Second, Plaintiff claims that, on October 17, 2022, Defendant Larry C. threatened Plaintiff that he would

have medical take Plaintiff off her seizure medication and told Plaintiff "that he didn't care if [Plaintiff] had a seizure and died[; . . .] he would make sure that none of the staff checked on [Plaintiff]." (*Id.*, PageID.11.) "Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two." *Burgess*, 735 F.3d at 472. The Fourth Amendment applies to free citizens, the Eighth Amendment applies to convicted persons, and the Fourteenth Amendment applies to pretrial detainees. *Id.* Because Plaintiff was a convicted person at the time of these alleged events,[4] the Court will analyze Plaintiff's claims under the Eighth Amendment's prohibition against cruel and unusual punishment.

### 1.    Soiled Undergarments

As to Plaintiff's claim that Defendant Larry C. did not immediately provide Plaintiff with clean undergarments following Plaintiff's IBS accident, the Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

---

[4] Newaygo County Circuit Court records indicate that Plaintiff pleaded nolo contendere on September 26, 2022. MiCourt Case Search, https://micourt.courts.michigan.gov/case-search/ (select "Continue," select "27th Circuit Court - Newaygo," search "Spoors" for "Last Name" and "LaTanya" for "First Name," select Case No. 2022-0000013042-FH; under "Charges," select "Show") (last visited February 28, 2023).

12

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* To establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (quoting *Rhodes*, 452 U.S. at 347). She then must subjectively show that the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Id.* at 455 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In a conditions of confinement case, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet disregards the risk by failing to take reasonable measures to abate it." *Abdur-Reheem-X v. McGinnis*, 198 F.3d 244 (6th Cir. 1999) (citing *Farmer,* 511 U.S. at 837).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.") (internal quotation marks omitted)). "It is well-established that the presence of

*some* unsanitary conditions in a cell (including fecal matter) does not establish an Eighth Amendment claim, except in circumstances where the volume of matter and duration of exposure are extreme." *Edge v. Mahlman*, No. 1:20-CV-892, 2021 WL 3725988, at *3 (S.D. Ohio Aug. 23, 2021). Allegations that a prisoner was consistently exposed to fecal matter for days are sufficient to state an Eighth Amendment claim. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (concluding that a prisoner who alleged that he was placed in "shockingly unsanitary" cells for six days, one of which was covered in "massive amounts" of feces and the other of which was equipped with only a clogged drain to dispose of bodily waste, stated a violation of the Eighth Amendment); *Taylor v. Larson*, 505 F. App'x 475 (6th Cir. 2012) (finding a question of fact as to the prisoner's Eighth Amendment claim where the prisoner alleged that he was confined to a cell covered in fecal matter for three days); *DeSpain*, 264 F.3d at 974 (finding that exposure to non-working toilets and other inmates' urine and feces via standing water for thirty-six hours was sufficiently serious). However, the temporary exposure to human waste is not sufficiently serious to state an Eighth Amendment claim, particularly where the plaintiff does not allege to have been injured as a result. *See Lamb*, 677 F. App'x at 209–210 (concluding that inmate's four-hour exposure to human waste due to flooded toilet water insufficient to state Eighth Amendment violation); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding that there was no Eighth Amendment violation where an inmate complained that he was exposed to raw sewage from an overflowed toilet in his cell for four days, but suffered no physical harm).

That is not to say that exposure to one's own feces is never actionable or that serious or permanent physical injury is required. In *Parrish v. Johnson,* 800 F.2d 600 (6th Cir. 1986), the court held that the plaintiffs stated Eighth Amendment violations where two paraplegic prisoners with diminished bladder and bowel control and with little or no ability to clean themselves were

14

"regularly" or "routinely" left sitting in their own feces for significant periods of time, causing risk of infection. *Id.* at 611. This case, however, bears little factual similarly to *Parrish.*

Ultimately, the Court finds that Plaintiff fails to state an Eighth Amendment claim against Defendant Larry C. after Defendant Larry C. "refused to change [Plaintiff] out of soiled under garments that [were] soiled with feces . . ." on September 27, 2022. (ECF No. 1-2, PageID.10.) Plaintiff states that she received clean undergarments "the following shift" (*id.*) and does not allege that she suffered or was at risk of suffering any physical harm as a result of waiting until the next shift for clean undergarments. Moreover, in contrast to the plaintiff in *Parrish*, Plaintiff does not contend that she was forced to continue to wear the dirty undergarments, or that she was unable to use the toilet or use the sink to clean herself. *See Passmore v. Josephson*, 376 F. Supp. 3d 874, 882 (N.D. Ill. 2019) (holding that inmate failed to state a claim for unconstitutional conditions of confinement based upon dirty underwear where the plaintiff was not forced to wear underwear and could wash the underwear and himself). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Larry C. for unconstitutional conditions of confinement.

### 2.    Verbal Harassment

With respect to Plaintiff's second claim against Defendant Larry C., the Sixth Circuit has consistently held that allegations of verbal harassment or threats by prison officials toward an inmate, though deplorable, do not constitute punishment or rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (finding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (concluding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)

15

(holding that verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

Plaintiff alleges that Defendant Larry C. verbally threatened and harassed Plaintiff on October 17, 2022, but does not allege that Defendant Larry C. engaged in any actions to carry out the alleged threats. While the Court certainly does not condone the verbal harassment alleged, Plaintiff's allegations do not rise to the level of an Eighth Amendment violation according to Sixth Circuit precedent. The Court will therefore dismiss Plaintiff's claim against Defendant Larry C. based upon alleged threats and verbal harassment on October 17, 2022.

### E.      Fourth and Sixth Amendment Claims

Plaintiff also purports to bring claims under Section 1983 for violation of her Fourth and Sixth Amendment rights. (ECF No. 3, PageID.22.) However, Plaintiff's amended complaint does not implicate either the Fourth or Sixth Amendment.

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to a stop or arrest of a "free person," before the probable cause determination. *Aldini v. Johnson*, 609 F.3d 858, 865 (6th Cir. 2010). It does not apply to pretrial detainees or those who have already been criminally convicted. *Id*. And the guarantees of the Sixth Amendment are applicable only to

16

the "criminal prosecution," *Kirby v. Illinois*, 406 U.S. 682, 690 (1972), which is not at issue here. Accordingly, the Court will dismiss Plaintiff's Fourth and Sixth Amendment claims.

### F.    State Law Claims

Lastly, Plaintiff brings claims for "medical negligence" and "staff negligence of Newaygo County Jail." (ECF No. 3, PageID.22.) Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Negligence is not actionable under Section 1983 because it is "not 'arbitrary in the constitutional sense.'" *Lewellen v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129 (1992)). Therefore, the Court liberally construes Plaintiff's reference to negligence as an attempt to raise additional claims under Michigan state law.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

17

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims because the Court declines to exercise supplemental jurisdiction over them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's federal claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If Plaintiff is barred, she will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __March 14, 2023__              __/s/ Sally J. Berens_____
                                         SALLY J. BERENS
                                         United States Magistrate Judge

18